**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JOHN DOOLITTLE (#109680)**                                    **CIVIL ACTION**

**VERSUS**

**SGT. HERMAN HOLMES, ET AL.**                                **NO. 06-0986-C-M2**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, October 16, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JOHN DOOLITTLE (#109680)**                                              **CIVIL ACTION**

**VERSUS**

**SGT. HERMAN HOLMES, ET AL.**                                            **NO. 06-0986-C-M2**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to Mandate of the United States Court of Appeals for the Fifth Circuit, rec.doc.no. 58, this matter has been referred back for further proceedings in connection with the plaintiff's claim that he was wrongly denied an opportunity for exercise for seventy-one (71) days while confined in administrative backlog. The matter now comes before the Court on cross-motions for summary judgment of the plaintiff and defendants Howard Prince and Joli Darbonne as ordered by the Court. See rec.doc.nos. 69 and 72.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, originally filed this proceeding pursuant to 42 U.S.C. § 1983 against Sgt. Herman Holmes, Trish Foster, David James, Howard Prince, Col. Donald Davis, Joli Darbonne, Warden Darryl Vannoy, Reginald Ladmirault, Warden Burl Cain and Secretary Richard Stalder, complaining that his constitutional rights were violated by the defendants in numerous respects. As pertinent to the issue remaining before the Court, the plaintiff complained that he was denied an opportunity for exercise while he was confined in administrative backlog for seventy-one (71) days while awaiting availability of space in extended

lockdown.[1]  By Report and Recommendation dated September 27, 2007, approved by the District Judge on October 23, 2007, see rec.doc.nos. 37 and 40, the Court dismissed the plaintiff's claims against defendant David James for failure of the plaintiff to serve this defendant within 120 days (as mandated by Rule 4(m) of the Federal Rules of Civil Procedure) and granted the motion to dismiss of the remaining defendants, dismissing the plaintiff's claims without prejudice to any state law claims which the plaintiff may have.  On appeal, the Fifth Circuit affirmed the decision of the District Court in substantial part but vacated the dismissal of the plaintiff's "denial-of-exercise claim" upon a finding that the plaintiff had "alleged a physical injury resulting from the denial of exercise" and so had "pleaded enough facts to state a claim to relief that [was] plausible on its face" (internal quotations omitted), citing Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  See rec.doc.no. 58.

 The plaintiff now moves for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, and his own affidavit.

 The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a copy of American Correctional Association 4-4270 (relative to exercise standards for inmates housed in segregated confinement), LSP Posted Policy No. G-37 (relative to "Confinement to Room or Cell Sanction", a punishment authorized by the prison rulebook), a disciplinary report dated August 19, 2006 (charging the plaintiff with Defiance and an Aggravated Sex Offense), certified copies of the plaintiff's Master Prison Record, Conduct Report, Inmate Location Sheets and Shower Rosters, certified copies of pertinent

---

[1] The defendants contend that the plaintiff was only held on administrative backlog for a period of 67 days.

excerpts from the plaintiff's medical records, certified copies of the plaintiff's administrative proceedings, a certified copy of the Disciplinary Rules and Procedures for Adult Inmates, and the affidavits of Dr. Jonathan Roundtree and defendants Howard Prince and Joli Darbonne.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

In his Complaint, the plaintiff alleges that, in February, 2005, and prior thereto, defendant Herman Holmes threatened the plaintiff with false disciplinary action. When the plaintiff thereafter filed administrative grievances relative to these threats, his administrative grievances were wrongly denied by defendants Trish Foster and David James. More than a year later, on August 19, 2006, defendant Holmes in fact issued an allegedly false disciplinary report against the plaintiff, whereupon the plaintiff was placed in administrative segregation pending resolution of the disciplinary charge. On August 23, 2006, the plaintiff was brought before a disciplinary board chaired by defendants Davis and Ladmirault where he was allegedly denied due process, was wrongly found guilty, and was sentenced to extended lockdown. However, inasmuch as there was assertedly no space available in extended lockdown, the plaintiff was placed on administrative backlog for seventy-one days pending the availability of such space. When the plaintiff thereafter filed an administrative grievance complaining that administrative backlog at LSP was unconstitutional because there were no limitations upon its use and because it resulted in his being maintained in a cell for 24 hours per day

without exercise, his grievances were wrongly rejected by defendants Jolie Darbonne and Howard Prince.

Initially, the Court finds that there is some ambiguity as to the identity of defendants who remain before the Court because the Fifth Circuit opinion, while specifically affirming the dismissal of defendants Herman Holmes and Burl Cain, did not explicitly address the viability of the remaining defendants relative to the single claim which has been remanded for further review. Notwithstanding, the Court concludes that the Fifth Circuit opinion, which affirmed the District Court opinion in all respects other than as to the "denial-of-exercise claim", effectively affirmed the dismissal of those defendants who were not alleged to have had any arguable personal involvement in that claim. Accordingly, the Court concludes that, in addition to the explicit affirmance of the dismissals of Herman Holmes and Burl Cain, the Fifth Circuit likewise effectively affirmed the dismissals of defendant David James (for the plaintiff's failure to timely serve this defendant), of defendants Donald Davis and Reginald Ladmirault (who were only involved as members of the disciplinary board which originally sentenced the plaintiff to extended lockdown), of defendant Trish Foster (who was only involved in addressing grievances filed by the plaintiff which did not raise his denial of exercise claim), and of defendant Richard Stalder (who was only alleged to have failed to timely address the plaintiff's administrative grievance). This analysis leaves only defendants Joli Darbonnne and Howard Prince as defendants in this proceeding,[2] a conclusion with which

---

[2] In his original Complaint, the plaintiff made no factual allegations whatever relative to defendant Darryl Vannoy. In his Motion for Summary Judgment, however, the plaintiff now clarifies that defendant Vannoy acted together with defendants Darbonne and Prince to reject the plaintiff's administrative grievance in October, 2006. Accordingly, to the extent that defendant Vannoy remains as a defendant in this

the defendants appear to agree inasmuch as the instant motion has been filed only on behalf of these defendants.  These defendants are alleged to have participated in denying the plaintiff's administrative grievance in October, 2006, which grievance arguably presented the claim of a denial of exercise opportunities while the plaintiff was housed on administrative backlog.

Turning to a substantive review of the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection therewith.  Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect a public official who is performing discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that her conduct was unlawful in the

---

proceeding, the analysis utilized in addressing the instant motions for summary judgment is equally applicable to defendant Vannoy.

situation which he confronted. Id.[3] In the instant case, the defendants assert that the plaintiff's claim fails because he has failed to sufficiently establish that the defendants participated in any violation of the plaintiff's constitutional rights.

Undertaking the Saucier analysis, and upon a review of the parties' motions and supporting documents, the Court concludes that the defendants' motion should be granted. This conclusion is not reached lightly, however, because the Court finds that the defendants' motion is frankly misleading and somewhat disingenuous, and that the defendants have not fairly addressed the seriousness of the plaintiff's concerns. Ultimately, however, in the narrow context of the instant case, the Court finds that there are no disputed issues of material fact and that the defendants are entitled to summary judgment as a matter of law.

The law is clear that an inmate has the constitutional right to be free from exposure to cruel and unusual conditions of confinement. While the Eighth Amendment "does not mandate comfortable prisons", Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Constitution imposes upon prison officials at least minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that

---

[3] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison officials responsible for the deprivation were "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, the Court must determine whether the prison officials were both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and whether they also in fact drew the inference. Id. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra. Further, in appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk. Farmer v. Brennan, supra.

The courts of this Circuit and others have repeatedly held that a reasonable opportunity for exercise is a constitutional right which may not arbitrarily be revoked, see, e.g., Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982), amended in part and vacated in part, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Maze v. Hargett, 200 F.3d 814 (5th Cir. 1999). While neither the Fifth Circuit nor the United States Supreme Court has ever specifically held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of exercise opportunities might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case. See, e.g., Hewitt v. Henderson, 271 Fed.Appx. 426 (5th Cir.

2008); Green v. Ferrell, supra; McGruder v. Phelps, 609 F.2d 1023 (5th Cir. 1979). In addition, there are numerous reported decisions which indicate that limitations upon an inmate's opportunity for exercise must take into account the size of his cell, the amount of time he spends locked in his cell each day, and the overall duration of his confinement. See, e.g., Green v. Ferrell, supra.

In the instant case, the defendants have made little attempt to address the factors identified above[4] or to address the reported decisions in this Circuit and elsewhere which recognize the requirement that inmates must be allowed a reasonable opportunity to exercise outside of their cells.[5] Instead, the defendants apparently seek to cloud the issue in

---

[4] The Court notes that in another case pending before this Court, wherein the plaintiff complained of 16 weeks of segregated confinement at LSP without being allowed an opportunity for out-of-cell exercise, attorneys for the State of Louisiana have explicitly acknowledged that there were disputed issues of material fact whether the objective component of the Eighth Amendment conditions-of-confinement test had been met and that a consideration of the stated factors weighed heavily in the plaintiff's favor, with the size of the plaintiff's cell admittedly being "not sufficient size to permit ... more than basic stretching and limited calishenics [sic]", and with the plaintiff admittedly being confined therein for almost 24 hours per day. See Robert Graham v. Shirley Coody, et al., Civil Action No. 08-0622-RET-CN.

[5] In fact, two of the principal cases cited by the defendants, Williams v. Goord, 142 F.Supp.2d 416 (S.D. N.Y. 2001), and Davidson v. Coughlin, 968 F.Supp. 121 (S.D. N.Y. 1997), recognize that a denial of exercise for as little as thirty (30) days presents a "close constitutional case". Specifically, in Williams, the Court held that an inmate who, for 28 days, was allowed out of his cell to exercise one hour per day but was fully restrained while doing so, stated a claim appropriate for a jury as to whether his opportunities for exercise during that period were "meaningful". And in Davidson, the Court found no liability, but was only addressing in that case the denial of outdoor exercise for 30 days, which exercise was not even fully denied to the inmate but was merely curtailed. The Davidson Court specifically noted that, had the inmate been completely denied outdoor exercise for 30 days, the case would have presented a "closer constitutional question", and the Court further noted, in contrast to the instant case, that the inmate in that case was allowed to walk many places within the prison on a regular basis, being free "to attend religious services, to dine in the mess hall three times per day, to receive visitors, to study in the library, to attend ... medical appointments, to attend grievance interviews ... and to walk to various places within the prison."

this case by emphasizing matters which are irrelevant and by making assertions which are misleading and/or erroneous. For example, the defendants make numerous and repetitive assertions that the plaintiff has no clearly established constitutional right "to exercise <u>outdoors</u> in the sunlight and fresh air," and that they have, "valid penological reasons for prohibiting inmates ... from participating in <u>outdoor</u> exercise." (Emphasis added). This, however, is clearly not the issue in this case; the plaintiff has never asserted that he was entitled to exercise outdoors and has only complained herein of the denial of exercise out of his cell (walking on the tier hallway, for example).[6] As another example, the defendants misleadingly assert that, because the plaintiff was sentenced to Camp J in connection with his original disciplinary report, and because

---

[6] The defendant is deemed to be aware of the established jurisprudence that some opportunity for exercise is mandated for inmates serving long sentences of confinement. <u>See</u>, <u>e.g.</u>, <u>Ruiz v. Estelle</u>, <u>supra</u> ("[i]nmates require regular exercise to maintain reasonably good physical and psychological health."). In <u>Green v. Ferrell</u>, <u>supra</u>, for example, although the Fifth Circuit Court upheld a prison restriction which did not allow <u>outdoor</u> exercise to the inmate plaintiffs, the Court focused in that case upon the fact that the plaintiffs were serving sentences averaging less than three months and were allowed 5 hours per day outside of their cells in a large indoor common room. In contrast, in <u>Maze v. Hargett</u>, <u>supra</u>, liability was found and nominal damages were awarded to a plaintiff inmate who was in fact allowed sporadic outdoor exercise and one hour per day of indoor exercise in a small crowded dayroom. The Court found in that case, after an evidentiary hearing, that the opportunity for exercise, both indoors and out, was decidedly insufficient. The Court further denied the defendants' claims that their actions were reasonable in light of their respective knowledge (qualified immunity) and that they did not have the requisite culpable state of mine to amount to deliberate indifference. <u>See also</u> <u>Hewitt v. Henderson</u>, 271 Fed.Appx. 426 (5th Cir. 2008)(reversing grant of dismissal in favor of defendant and remanding for additional factual development); <u>Ruiz v. Estelle</u>, 679 F.2d 1115 (5th Cir.), <u>modified in part on rehearing</u>, 688 F.2d 266 (5th Cir. 1982), <u>cert. denied</u>, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983)(upholding award of injunctive relief mandating at least one hour per day of out-of-cell exercise for inmates housed in administrative segregation for more than three days). <u>Cf.</u>, ACA Standard No. 4-4270 (stating that inmates housed in segregated confinement should normally receive at least one hour per day of exercise outside of their cells, five days per week).

inmates sentenced to Camp J are disallowed many privileges, and because the plaintiff was "identified as being a security risk", he therefore "deprived himself of outdoor exercise by his poor conduct and his failure to follow the prison rules and regulations."  This is incorrect.  In the first place, the plaintiff's sentence to Camp J for his original disciplinary infraction seems irrelevant to the issue in this case because the plaintiff's denial of out-of-cell exercise occurred, not while housed at Camp J, but while awaiting a transfer to Camp J.  Moreover, even inmates housed at Camp J are allowed regular opportunities for out-of-cell exercise, so the plaintiff's sentence to Camp J, with its associated deprivations, surely did not operate to deprive him of such exercise. Further, although the defendants suggest that the plaintiff was "identified as being a security risk", thereby justifying his deprivation of exercise, they provide no factual basis for having applied this label to the plaintiff and, instead, point only to the plaintiff's Shower Rosters which, on pre-printed typed forms, universally labeled every inmate housed thereon as being a "security risk".  In contrast, the plaintiff's Conduct Record, which the defendants also attached to their motion, provides little justification for his "security risk" label, reflecting instead that prior to the instant disciplinary charges, the plaintiff was housed in a medium security dormitory setting and had had no disciplinary infractions for more than two (2) years. Accordingly, the Court finds no factual basis, on the record before it, for the defendants to have labeled the plaintiff a "security risk" and no basis, therefore, for depriving him of an opportunity for exercise based on such label. And in any event, even the defendants concede that a deprivation of exercise for so-called security reasons should be limited to "unusual circumstances or circumstances in which exercise is impossible because of disciplinary

needs," citing Williams v. Greifinger, 97 F.3d 699 (2nd Cir. 1996).  As a final example, the defendants refer, in support of their contention that the plaintiff was not entitled to out-of-cell exercise while housed on administrative backlog, to LSP Posted Policy No. G-37.  This Posted Policy, however, appears to be wholly inapplicable to the plaintiff's position.  Rather, this Posted Policy is addressed only to inmates sentenced, after a disciplinary violation, to a specific punishment authorized by the prison rule book, "Confinement to Room or Cell", which was not in fact imposed upon the plaintiff in this case.  Accordingly, it is factually inaccurate for the defendants to assert, as they do in their Statement of Undisputed Facts, that this Posted Policy operated to prohibit the plaintiff "from participating in tier time [or] yard time".  Moreover, this Posted Policy and the attached American Correctional Association Standard No. 4-4270 upon which it is assertedly based,[7] in fact lend more credence to the plaintiff's argument than otherwise.  Specifically, the ACA Standard explicitly states that, absent security concerns which, as discussed above, have not been shown to be applicable in this case, inmates housed in segregation should receive "a minimum of one hour of exercise per day outside of their cells, five days per week".  And the LSP Posted Policy reflects, in implicit recognition of the seriousness of a deprivation of exercise, that while the Cell Confinement punishment imposes a denial of exercise opportunities, this punishment may only be imposed for periods of thirty (30) days at a time and may not normally be imposed again without affording the inmate a 5-day period of renewed privileges.

---

[7] The defendants explicitly assert that the referenced Posted Policy was modeled after ACA Standard No. 4-4270.  However, the Posted Policy itself refers only and instead to ACA Standard 4215, a copy of which was not attached to the defendants' motion.

Notwithstanding the foregoing many apparent misstatements and misleading assertions made by the defendants, the Court concludes, nonetheless, that the defendants are entitled to summary judgment on the basis of qualified immunity in this proceeding.  Specifically, as discussed below, the Court finds that there is an insufficient showing by the plaintiff of direct personal involvement by the defendants in the constitutional violations alleged.  Further, in the alternative, the Court also finds that there is an insufficient showing of injury suffered by the plaintiff which is greater than de minimis.

From a review of the plaintiff's allegations and the documents included in the record, it appears that the sole involvement of defendants Darbonne and Prince in the instant proceeding was with respect to the plaintiff's administrative grievance, with defendant Darbonne preparing a response to same and with defendant Prince approving this response. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983).  In the absence of direct personal participation by a supervisory official in the alleged constitutional violation, the plaintiff must show that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  Lozano v. Smith, supra.  Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under § 1983.  Monell v.

Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying the foregoing standard, the Court finds that the plaintiff has failed to state a cause of action against the named defendants. Although he complains of the defendants' rejection of his administrative grievance and their failure to take remedial action in response thereto, the law is clear in this Circuit that an inmate is not constitutionally entitled to an investigation or to a favorable response to his administrative claims.[8] Further, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

Accordingly, the plaintiff's claims against the defendants of an alleged failure to favorably respond or take action in response to his administrative grievance is without legal foundation and must be dismissed.

Further, in the alternative, although the plaintiff alleged in his Complaint that he suffered muscle atrophy as a result of his confinement for 2½ months without exercise, there is no evidence to support this conclusory assertion. The plaintiff has provided nothing to support his claim of muscle atrophy or to show its extent or duration, and in contrast, the medical records provided by the defendants, together with

---

[8] The decisions relied upon by the plaintiff to support a contrary view were not decided in the Fifth Circuit.

the affidavit of Dr. Jonathan Roundtree, reflect that the plaintiff made no complaints to prison medical personnel at any time, either during his confinement or thereafter, of muscle atrophy suffered during the relatively brief period of his deprivation.  Further, the defendants assert without contradiction that any muscle atrophy which the plaintiff may in fact have sustained would have been readily reversible through a program of exercise after the plaintiff was released from administrative segregation.

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a ... correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury".  It is further established that, in order to meet this standard, the physical injury claimed by the plaintiff must be greater than de minimis.  See Alexander v. Tippah County, Miss., 351 F.3d 626 (5th Cir. 2003), cert. denied, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004).  In the instant case, the plaintiff has failed to make an adequate supportable showing of any physical injury greater than de minimis.  See Luong v. Hatt, 979 F.Supp. 481 (N.D. Tex. 1997)(suggesting that injuries for which medical treatment is neither needed nor sought should generally be regarded as de minimis).  For this reason as well, therefore, the plaintiff's claim is subject to dismissal.

## RECOMMENDATION

It is recommended that the plaintiff's motion for summary Judgment, rec.doc.no. 72, be denied, that the defendants' Motion for Summary

Judgment, rec.doc.no. 69, be granted, dismissing the plaintiff's claim asserted against the remaining defendants, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, October 16, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**